# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MELVIN B. WILLIAMS,

    Plaintiff,

vs.                                        Civil No. 00-021 BB/WWD

KENNETH S. APFEL,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed August 14, 2000 **[docket # 10]**.  The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  Plaintiff, currently age 37, alleges a disability due to blindness and substance abuse.  He has a general education diploma ("GED") and some vocational training for electrician work. The Administrative Law Judge ("ALJ") found that Plaintiff was disabled and benefits were awarded in May 1995.

    2.  Mr. Williams' benefits were terminated effective January 1, 1997.  After the hearing which resulted in the termination, the ALJ found that Plaintiff has a severe impairment of blindness of the left eye, but that he has no severe mental impairment other than that associated with substance abuse (alcohol and cocaine).  The termination was based on the law enacted on March 29, 1996 under which alcoholism can be a contributing factor material to the determination

of disability only when the remaining limitations *by themselves* are disabling, i.e., when they are "independent" of the alcoholism. § 404.1535(a)(2)(ii) (emphasis added).[1]  The ALJ concluded that Mr. Williams can return to his past relevant work as a ranch hand, electrician and construction laborer. The Appeals Council denied Mr. Williams' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.    Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ did not weigh the evidence properly. Plaintiff argues that he is disabled as a result of a mental impairment -- a personality disorder.  He bases the error on the ALJ's disregard of the reports of Dr. Sutton, Ms. Rochelle, and the neuropsychological testing done by Sandra Montoya, Ph.D.[2]

4.    The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5.    Plaintiff lives by himself in an apartment, but depends on financial assistance from

---

[1] See P.L. 104-121 §§105(a)(1) & (b)(1) (amending U.S.C. §§ 423(d)(2) & 1382(c)), which states that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  At the time benefits were awarded, substance abuse was a proper basis for a finding of disability.

[2] Because Plaintiff's eye impairment is not at issue, I need not address the ALJ's findings on this issue.

welfare and his parents. Tr. at 34, 38-39. He told the ALJ that he stopped using cocaine and marijuana about a year prior to the hearing. Tr. at 40. He also said that he quit drinking about eight months earlier, but upon further questioning by the ALJ, admitted that he still "slips" and that he had gotten drunk several times over the prior weeks. Tr. at 41-42.

6. Plaintiff has been through numerous substance abuse programs, usually after being arrested for DWI's. Tr. at 337. The last program was in 1996 (2 years before the hearing) at Turquoise Lodge, which he attended for 30 days and completed. He does not attend AA meetings. Tr. at 44.

7. Mr. Williams admitted that he has problems with attitude, that when he is aggravated, he gets mad "too easily." Tr. at 50. He has worked at several jobs and stated that he was fired from about six out of ten of these jobs, sometimes because of drinking, sometimes because he is too frustrated and stressed. Id. He takes no medication for his mood or personality disorder. Tr. at 46.

8. In his decision, the ALJ stated that "I cannot find that the claimant has another medically determinable psychological intellectual impairment other than associated with his alcoholism and cocaine dependence." Tr. at 20. He concluded that Plaintiff had the residual functional capacity to perform past relevant work as a ranch hand, electrician and construction laborer.[3]

9. After a review of the record, particularly the medical reports, I find that there is clearly some question here regarding the severity of Plaintiff's mental impairment, apart from his

---

[3] The ALJ determined that Plaintiff's visual problems did not preclude him from these jobs, since they do not require "significant depth perception or close work." Tr. at 22. Plaintiff does not take issue with these findings.

continuing substance abuse. A discussion of those records which present evidence of a separate mental impairment follows.

10. The record contains a report from Rehabilitation Counseling Services dated March 1994 and completed by Ruth Rochelle, a certified rehabilitation counselor (this report was part of the record for the initial hearing which resulted in an award of benefits). Ms. Rochelle conducted a thorough assessment which included intelligence and vocational test batteries, as well as interviews with both Plaintiff and his adoptive parents. Tr. at 216-225. The report presents a picture of an individual whose past history is replete with behavioral aberrations that reach into various areas of functioning:

> [Plaintiff's father] described a vocational and social history by his son not unlike an individual having long term psychological difficulties. Attempts to allow Melvin Bret to remain in the family home have been a disaster. He has stolen money from his parents, stolen and sold numerous articles from the house and yard, he has created situations with the younger siblings of such threat that he cannot be in the home without his father present. . . [Plaintiff] lost employment due to bizarre behaviors on the job. He has defecated on the floor of the business and in a small camper belong to one of his other employers, stolen articles and money from businesses. . . . Melvin Bret lost every job that he has ever had related to his behavior or for stealing. He does not demonstrate honesty, good work habits and is not dependable. He has been fired for showing up to work drunk or for drinking on the job. Tr. at 220.

11. The report continues that the parents have exhausted their financial ability to assist their son by trying to pay room rent and leave him food, but the report states that Plaintiff has taken advantage of efforts to help by stealing and creating "major disruptions to their family peace." Tr. at 220-21. On a recent visit to the Williams' home, Plaintiff was allowed inside, but after a violent argument erupted, it was necessary to call the police in order to remove him. Tr. at 220.

12. According to the report, Plaintiff has "lost or damaged new eye glasses, lost or had

his boots stolen, been penniless only hours after getting a pay check and lost all personal belongings to cook and keep house." Tr. at 221.  The family can no longer afford to pay the expenses of psychological care.  Plaintiff was a homeless individual for several weeks prior to the vocational report.  He lived "on the streets in a filthy and unhealthy environment," sleeping in an unheated storage shed with no facilities for bathing.  Tr. at 217, 224.  He got his food by begging from family and friends.  Tr. at 224.

13. Ms. Rochelle seriously questioned Plaintiff's ability to be self-sufficient, even for his own personal needs, noting that he "would not be capable of management of his own funds." Plaintiff's sister serves as his guardian.  Tr. at 224.[4]  She noted Plaintiff's apparent inability to "bathe, wear clean clothing and go to a specific location at a regular time." Tr. at 221.  When he showed up for the vocational evaluation, Plaintiff "had a strong stench about him, as if he had not bathed in several days." Tr. at 216.

14. The report contains a few comments which I find critical to the issue of whether Plaintiff's mental impairment is separate from his substance abuse.  Plaintiff's father report that Melvin's "numerous aberrations of behavior" started during his high school years, with poor grades (generally F's) and breakdowns in relationships with both peers and teachers.  Tr. at 219-20.[5]  Ms. Rochelle noted that the use of alcohol and drugs "compounded" his initial adjustment to society.  Tr. at 224.  Further, in the last paragraph of the report, she opined that Plaintiff's poor scores and grades would have *preceded* his use of any drugs or alcohol, "which was thought to

---

[4] However, a March 1995 halfway house assessment form indicated that Plaintiff lived independently.  Tr. at 290.

[5] Plaintiff's father said that Melvin was taunted by his peers because of his thin appearance.  He weighed only 62 pounds when he was 12 years of age.  Tr. at 219, 225.

have been the etiology for some of his behaviors." Tr. at 225.

15.   While the ALJ correctly did not regard Ms. Rochelle as an "acceptable medical source" under the regulations, see 20 C.F.R. §§404.1513 and 416.913, ignoring this report was error, in light of other evidence in the record which basically echoes Ms. Rochelle's findings. Such cumulative disregard amounts to a lack of substantial evidence for the ALJ's decision.

16.   For example, The ALJ similarly discounted the neuropsychological report of Geoffrey Sutton, Ph.D., which was completed April 1997, prior to the second hearing.  Dr. Sutton also conducted a battery of tests and concluded that Mr. Williams suffered not only from alcohol dependence, but from a Mood Disorder, and an affective Cognitive Disorder (developmental learning disability) which possibly resulted as much from inheritance, congenital effects (fetal alcohol syndrome) and head traumas as from the history of substance abuse.  Tr. at 413.

17.   Dr. Sutton recognized that Plaintiff's continued alcohol dependence precluded not only medicating Plaintiff, but left Plaintiff with a poor prognosis for treatment.  At the same time, he opined that Plaintiff "likely will continue to have difficulty due to problems of personality, Mood Disorder and cognitive dysfunction."  Tr. at 414.

18.   The ALJ disregarded this report because he felt that Dr. Sutton was provided with "selective reports" with information about Plaintiff's medical problems predating the substance abuse and because Plaintiff's counsel provided Dr. Sutton with mental assessment forms which the ALJ found to be "a cynical attempt to utilize the provision of the Cruse case" as well as an effort on the part of Plaintiff's counsel's to mislead Dr. Sutton in an attempt to influence the

6

outcome.[6]  Tr. at 19-20.

19.   This basis for discounting the report is not supported either by the evidence or by the language in the report itself, which expressly indicates that Dr. Sutton was apprised of the full extent of Plaintiff's substance abuse: "He has a long standing problem of alcohol abuse and excessive use.  Treatments have been unsuccessful according to the records and he continues to use alcohol. . . ."  Tr. at 413.

20.   I also find that the ALJ erred in not giving any weight at all to the Medical Assessment of Ability to Do Work-Related Activities (Mental).  However, I note that while Cruse did not preclude use of these forms, the Tenth Circuit did find that they "hamper[ed]" not only the Court's review, but an ALJ's review as well.  Cruse v. U.S. Dep't of Health and Human Serv., 49 F.3d 614, 618 (10th Cir. 1995).  The ALJ's comments regarding counsel's use of the form as an attempt to steer the evidence toward a favorable result for Williams rather than to elicit an accurate assessment of Plaintiff's overall abilities are not entirely groundless.

21.   The ALJ also discounted Dr. Sutton's report because it was "inconsistent with other evidence" and because he did not consider the findings to be corroborated by a report from a treating facility or physician which diagnosed organic brain syndrome, learning disability, or intellectual impairment.  Tr. at 19.

22.   Neither basis is supported by substantial evidence from the record.  Alcohol treatment records which reported Plaintiff as "doing well" referred to Plaintiff's progress with his

---

[6] Plaintiff gave Dr. Sutton the "Mental Assessment of Ability to Do Work-Related Activities" form which was addressed in Cruse v. U.S. Dep't of Health and Human Serv., 49 F.3d 614, 618 (10th Cir. 1995).  Cruse held that although the form's definition of "fair" was misleading, it nevertheless should be considered to be evidence of disability and means the same as "marked."  At 617.

7

substance abuse treatment, Tr. at 20, and do not constitute evidence of an accurate or fair assessment of Plaintiff's mental impairment. As far as the ALJ's statement that Dr. Sutton's report was uncorroborated, while a treating physician's opinion generally is favored over that of a consulting physician, see Reid v. Chater, 71 F.3d 372 (10th Cir. 1995), here there were no treating physician reports to compare with. Thus, the ALJ should not have ignored Dr. Sutton's findings simply because he was not a treating physician when no treating physician presented any conflicting evidence.

23. Further, given the reports of Dr. Karp and Ms. Rochelle, which offer findings regarding Plaintiff in a similar vein, the ALJ should have requested another consult if he felt that what he had before him in the record was inadequate. See Carter v. Chater, 73 F.3d 1019, 1021 (10th Cir. 1996) (ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues).

24. Although I ultimately find that remand is warranted, I agree with Defendant that the February 24, 1999 HSD report does not provide a basis for the remand, as it is not new and material evidence within the meaning under the regulations. The report is not only cumulative, but relates to a time period a year *after* the ALJ's decision. See O'Dell v. Shalala, 44 F.3d, 855, 858 (10th Cir. 1994); 20 C.F.R. § 404.970(b) (regulations require the Appeals Council to consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision).

25. I agree with Plaintiff that his mental disorder has been largely left behind in the social security evaluation process, possibly overshadowed by Plaintiff's unquestionable and continued substance abuse problem. There is sufficient evidence in the record of a separate mental

impairment to warrant remand, based on the reports of Dr. Sutton, Ms. Rochelle and Dr. Karp, who offered diagnoses of PTSD and dysthmia apart from Plaintiff's substance abuse. Tr. at 228.

26. Remand should focus on Plaintiff's mental impairment separate from the substance abuse, and on the effects of the mental impairment on Plaintiff's ability to work. Contrary to Plaintiff's contention, substance abuse cannot be ignored on remand in the sense that its presence is crucial to help answer the key question: whether Plaintiff would still be found disabled if alcohol or drug use were to stop.[7]

27. The ability to evaluate the impairments separately may be difficult since Plaintiff continues to drink. As Dr. Karp opined, Plaintiff's lack of ability to handle funds for himself was due largely to his "ongoing heavy drinking." Tr. at 229. Thus, remand does not necessarily preclude a determination that Plaintiff is not disabled. Its purpose is to ensure that Plaintiff's mental impairment has been adequately addressed and that a finding that Plaintiff can still perform work is made according to proper legal standards and based on substantial evidence from the record.

28. Also, as the ALJ noted (Tr. at 53-54), there may be possible problems with Plaintiff's history as reported by his father, who testified at the hearing as a vocational rehabilitation counselor regarding Plaintiff's past history of behavioral and emotional aberrations. The record indicates that Plaintiff started drinking at age 15 and abusing crack/cocaine at the age of 22. Tr. at 382.

29. Thus, a fair evaluation requires that the Commissioner seek a medical expert to

---

[7] See 20 C.F.R. § 404.1535(b): "The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol. See also 416.935.

make a determination as to the severity of Plaintiff's mental impairment by itself.  A vocational expert other than Plaintiff's father should be consulted to determine whether Plaintiff can still perform jobs in the national economy.

### Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 10]** be GRANTED in order for the Commissioner to seek a medical expert to make a determination as to the severity of Plaintiff's mental impairment by itself.  Also, a vocational expert other than Plaintiff's father should be consulted to determine whether Plaintiff can still perform jobs in the national economy.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE